IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KYLE MICHAEL ESTES,
     Plaintiff,

vs.                                 Case No.:  3:12cv459/RS/EMT

SERGEANT STEPHEN N. NEFF
and OFFICER DALYN J. WILSON,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

     Plaintiff Kyle Michael Estes ("Estes"), an inmate, proceeds pro se and in forma pauperis in this action brought pursuant to 42 U.S.C. § 1983.  Estes sues Sergeant Stephen N. Neff ("Sergeant Neff") and Officer Dalyn Wilson ("Wilson"), both of whom were officers employed by the City of Gulf Breeze Police Department ("GBPD") at the time of the events giving rise to this action.  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C), and Fed. R. Civ. P. 72(b).  Presently before the court is the motion for summary judgment pursuant to Fed. R. Civ. P. 56 filed by Neff (doc. 53), to which Estes has responded in opposition (doc. 76).  For the reasons set forth below, the court recommends that Sergeant Neff's motion for summary judgment be granted.

I.     BACKGROUND AND PROCEDURAL HISTORY

     Estes initiated this action on September 24, 2012, by filing a complaint alleging that Sergeant Neff, Office Wilson, and a third police officer (Shawn Thompson, employed by the Pensacola Police Department) used excessive force against him during his arrest on September 25, 2010, in violation of the Eighth Amendment ("Initial Complaint") (doc. 1).  Estes also named the employing police departments as Defendants (*id.*).  Upon initial screening of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), the court determined that the factual allegations of the complaint were insufficient

to state a claim for relief as to one or more of the named Defendants (*see* doc. 7). The court therefore directed Estes to file an amended complaint (*id.*). Estes filed an amended complaint asserting claims of excessive force against the individual officers under the Fourth Amendment, and dropping the police departments as Defendants ("Amended Complaint") (doc. 10). Estes requested monetary damages for the alleged Fourth Amendment violations (*id.* at 7). Sergeant Neff filed a motion for summary judgment, arguing he is entitled to judgment in his favor because the sworn statements in Estes's Amended Complaint and later deposition should be disregarded by the court as "sham" testimony, and the sworn statements in Estes's Initial Complaint establish that Neff's action were reasonable as a matter of law (doc. 53 at 2; doc. 54 at 5–8). Neff additionally argues that even if the court considers the second version of events set forth in the Amended Complaint and Estes's deposition testimony, Neff is still entitled to summary judgment pursuant to <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), because taking Estes's second version of events as true would necessarily require a finding that he did not batter Neff, and such a finding is inconsistent with Estes's convictions for resisting Neff with violence and battery on Neff (doc. 53 at 2; doc. 54 at 8–12). Sergeant Neff submitted evidence in support of his position, including deposition testimony, a video from the dashboard camera of the officer who originally attempted to stop Estes (Officer Baker), and a copy of Estes's judgment of conviction and sentence (doc. 56). On August 16, 2013, the undersigned issued an order, informing the parties of the importance and ramifications of summary judgment consideration and providing them with information as to the requirements for materials submitted for review pursuant to Rule 56 (doc. 58). Prior to responding to Sergeant Neff's motion, Estes amended his complaint (with leave of court upon consent of the parties) to dismiss Officer Shawn Thompson from this action, because his claim against Thompson was barred by <u>Heck</u> (*see* docs. 72, 73, 74, 75, 80). In the Second Amended Complaint, Estes did not alter the factual allegations, claims, or relief sought against Sergeant Neff and Officer Wilson (doc. 73). Estes subsequently filed a response to Neff's motion for summary judgment and submitted evidence in support of his position, including deposition testimony, his own affidavit, and photographs on his injuries (docs. 76, 77, 78). Because the Second Amended Complaint is identical to the Amended Complaint in all material respects, the court construes Sergeant Neff's motion for summary judgment as directed to the Second Amended Complaint.

## II.    MATERIAL FACTS

As this case comes before the court on Sergeant Neff's motion for summary judgment, the court views the facts in the light most favorable to Estes, the non-moving party, *see* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993), drawing those facts from the pleadings, depositions, and other evidentiary materials on file.

With regard to the factual positions asserted by the parties, the court must apply the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(1) Supporting Factual Positions.**    A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> . . . .
>
> **(4) Affidavits or Declarations.**    An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (2010).    If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment, or grant summary judgment if Sergeant Neff's motion and supporting materials—including the facts considered undisputed—show that Neff is entitled to it.    *See* Fed. R. Civ. P. 56(e)(2, 3) (2010).    Any facts included in Sergeant Neff's Statement of Undisputed Facts (doc. 55) that are not controverted in Estes's Statement of Facts (doc. 78) are deemed admitted.    *See* N.D. Fla. Loc. R. 56.1(A) (all material facts set forth in moving party's statement of undisputed material facts will be deemed admitted unless controverted by statement required to be filed and served by opposing party).

In order to set forth the material facts, the court must first consider Sergeant Neff's argument that the sworn statements in Estes's Second Amended Complaint and deposition should be disregarded as sham testimony, and the court should consider only the statements in Estes's Initial Complaint. In considering the materials submitted by the parties for purposes of summary judgment, the Eleventh Circuit stated, "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins & Assocs. v. U.S. Indus., 736 F.2d 656, 657 (11th Cir. 1984). However, the district court does not abuse its discretion by considering "variations of testimony" or "instances of failed memory" that go to the weight and credibility of the evidence, as opposed to falsehoods that render the later sworn statements a disregardable "sham." *See* Croom v. Balkwill, 645 F.3d 1240, 1253 n.18 (11th Cir. 2011) (citing Tippens v. Celotex Corp., 805 F.2d 949, 953–55 (11th Cir. 1986) ("A definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence.")).

Here, in Estes's Initial Complaint, he stated , in relevant part, that after he fell on a rocky area and Neff fell on top of him, both he and Neff rolled into waist-deep water, and Neff struck him twice in the head with his flashlight (doc. 1 at 6). In his Amended Complaint and Second Amended Complaint, Estes deleted the allegation that he and Neff rolled into water, and added an allegation that after Neff landed on top of him, he (Estes) attempted to surrender by outstretching his hands and arms (doc. 10 at 5; doc. 73 at 5). In Estes's deposition, he adhered to the second version of events and admitted that the allegation that he and Neff rolled into water was false (doc. 56, Ex. 1, Estes Dep. pp. 33, 59). In Estes's deposition and summary judgment filings, he explains the discrepancies between the statements in his Initial Complaint and those in his Amended Complaint, deposition, and Second Amended Complaint, as caused by the fact that another inmate, Steven Jerkins, composed the Initial Complaint; whereas, he composed both amended complaints himself (doc. 76 at 1–2; doc. 77 at 10–11; Estes Statement of Facts ¶ 14; Estes Dep. pp. 32–33). Estes states Inmate Jerkins briefly scanned Estes's "paperwork," apparently copied information contained in a police report, and briefly read the factual allegations to Estes before he told Estes to sign the Initial Complaint (*id.*). Estes states he signed the Initial Complaint, admittedly under penalty of perjury, without full knowledge of

the legal implications of signing it (*id.*). Estes states after he received the court's order reciting the factual allegations of his Initial Complaint and suggesting they may be insufficient to state a constitutional violation against one or more of the named Defendants, he actually read the factual allegations of the Initial Complaint (Estes Dep. p. 32), and then corrected his factual assertions to exclude the allegation that he and Neff had rolled into water at the time Neff struck him.

The cases relied upon by Sergeant Neff in arguing that Estes's second version of events should be disregarded concerned discrepancies that arose after a party moved for summary judgment, and the non-moving party then offered affidavits including facts that contradicted or conflicted with earlier statements as a tactic to prevent summary judgment by creating an issue of material fact. Such is not the case here. Here, the discrepancy in Estes's allegations arose early in the litigation, before any Defendant was even served with the "corrected" Amended Complaint, and well before Sergeant Neff filed his motion for summary judgment. Further, Estes consistently adhered to the "corrected" version of events in his deposition, Second Amended Complaint, and materials submitted in opposition to Neff's motion for summary judgment. Therefore, the discrepancy did not undercut the purpose of the summary judgment motion. The undersigned concludes the discrepancy in Estes's factual assertions goes to the weight and credibility of the evidence, as opposed to a falsehood rendering the allegations in his amended complaints and deposition testimony a "disregardable sham." Therefore, the court will consider the facts presented in the Second Amended Complaint, Estes's deposition, and other evidentiary materials on file in ruling on the motion for summary judgment.[1]

The court conveys the following as the material facts.[2] In the early morning hours of September 24, 2010, Estes was speeding over the Pensacola Bay Bridge (Neff Statement of Undisputed Facts ¶ 3; Estes Statement of Facts ¶ 3). When Estes reached the other side of the bridge where the posted speed limit decreased to 35 miles per hour, he noticed blue lights turn on behind him

---

[1] That is not to say that a party's knowingly making false factual assertions in a pleading signed under penalty of perjury is acceptable or to be condoned. The Federal Rules of Civil Procedure provide a remedy for such conduct in the form of sanctions. *See* Fed. R. Civ. P. 11. Rule 11 provides for imposition of sanctions when a party violates its provisions, including the provision that by signing a pleading, the party certifies that the factual contentions contained therein have evidentiary support. *Id.* Additionally, perjury carries criminal penalties. *See* 18 U.S.C. § 1621.

[2] The court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. *See* Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

and understood that a law enforcement officer was attempting to stop him (Neff Statement of Undisputed Facts  ¶ 3; Estes Statement of Facts ¶ 3; Estes Dep. pp. 44–45).  Estes's actions were videotaped by the in-car camera of Officer Greg Baker's patrol car (*see* doc. 56, Ex. 4 ("Baker video")). Estes refused to stop, and instead continued traveling on Highway 98 into Gulf Breeze (Neff Statement of Undisputed Facts ¶ 4; Estes Statement of Facts ¶ 4; Estes Dep. pp. 44–45; Baker video). After driving approximately .7 miles, Estes turned off Highway 98 onto Fairpoint Drive, and then turned again onto Chanteclair Circle (Neff Statement of Undisputed Facts  ¶ 5; Estes Statement of Facts ¶ 5; Estes Dep. pp. 46–48, 97; Baker video).   Shortly after entering the Chanteclair neighborhood, Estes attempted to turn around and pull over, but accidentally hit the accelerator instead of the brake, and traveled 100–150 yards past five residences and lost control of his vehicle, crashing into a wall, mailbox, and tree (Neff Statement of Undisputed Facts ¶¶ 6–7; Estes Statement of Facts, ¶¶ 6–7; Estes Dep. pp. 47–59; Baker video).  The impact was great enough to cause Estes to hit his head on the steering wheel, causing him to briefly lose consciousness (Neff Statement of Undisputed Facts ¶ 7; Estes Statement of Facts ¶ 7; Estes Dep. pp. 49–50).  Estes then exited his vehicle and fled on foot, jumping a fence, running into the backyard of a residence, and continuing until he came to a rocky expanse (Neff Statement of Undisputed Facts ¶¶ 8–9; Estes Statement of Facts, ¶ 8; Estes Dep. pp. 49–52).

Shortly after Estes exited his car and began fleeing on foot, Sergeant Neff and Defendant Officer Dalyn Wilson arrived in the area of Chanteclair Circle to render backup (Neff Statement of Undisputed Facts ¶ 9; doc. 56, Ex. 2, Neff Dep. pp. 4–5).  Upon his arrival, Neff went to the east side of Chanteclair Lane, which is a circular road (Neff Statement of Undisputed Facts ¶ 10; Neff Dep. p. 5).  As Neff was slowly driving on the east side of Chanteclair Lane, Estes ran directly in front of his car toward the west, back toward the bayou  (Neff Statement of Undisputed Facts ¶ 10; Neff Dep. p. 6).  Neff stopped his car and proceeded to pursue Estes on foot between two houses (*id.*).  When Sergeant Neff got out of his car, he had lost sight of Estes and proceeded to walk toward the west on one side of a fence that separated two homes (Neff Statement of Undisputed Facts ¶ 11; Neff Dep. p. 6).  While looking and listening for Estes, Neff yelled out to Estes that they had a canine on site and for Estes to come out (Neff Statement of Undisputed Facts ¶ 11; Neff Dep. pp. 6–7).  Sergeant Neff heard rustling coming from the other side of the fence and followed the noises to the west toward the

bayou (Neff Statement of Undisputed Facts ¶ 11; Neff Dep. p. 7). When Neff reached the bayou, Estes ran three to four feet in front of him heading northbound toward the Pensacola Bay Bridge (*id.*).

After running "maybe a minute or two," Estes saw Neff's flashlight, lost his footing on rocks, and fell face first to the ground (Neff Statement of Undisputed Facts, ¶ 12; Estes Statement of Facts, ¶ 9; Estes Dep. pp. 53–54). Estes realized that Neff was "right there," and Estes "just wanted to get up," but Neff immediately jumped on top of him and hit him in the head twice with his heavy metal flashlight (Second Amended Complaint at 5; Estes Statement of Facts, ¶ 10; Estes Dep. pp. 53–54). When Neff jumped on top of Estes, Estes was on his stomach with his legs under him; he was not attempting to get up, and instead was attempting to surrender by outstretching his hands and arms (Second Amended Complaint at 5; Estes Dep. pp. 57, 63). After Estes realized he was hit two or three times with the flashlight, he decided to flee, so he "rolled" or "pushed out from under" Neff, proceeded down the rocks, jumped into the water, and swam to the other side of the bayou (Second Amended Complaint at 5; Estes Statement of Facts ¶¶ 11, 12; Estes Dep. pp. 54–58). Estes's encounter with Neff lasted only "a couple of seconds" (Estes Dep. p. 56). Estes never attempted to strike, punch, slap, kick, or push Neff, and never tried to drag Neff into the water or drown him (Estes Dep. pp. 54, 56, 64). Approximately 45 minutes to an hour elapsed between the time Estes escaped from Neff and when he next interacted with law enforcement; however, he had no other contact with Neff (Estes Statement of Facts ¶ 13; Estes Dep. pp. 65–66). Estes was charged and convicted of (1) escape or attempted escape, (2) fleeing/eluding a law enforcement officer with lights and siren activated, (3) resisting Sergeant Neff with violence, (4) battery on Sergeant Neff, (5) battery on Officer Shawn Thompson, (6) injuring or killing a police dog, (7) driving under the influence with property damages, (8) driving while license suspended or revoked (second offense), and (9) leaving the scene of an accident with property damage (Neff Statement of Undisputed Facts ¶ 29; Estes Statement of Facts ¶ 13; Estes Dep., attached Judgment).

III.     LEGAL STANDARDS

A.     Summary Judgment Standard

In order to prevail on his motion for summary judgment, Sergeant Neff must show that Estes has no evidence to support his case or present affirmative evidence that Estes will be unable to prove his case at trial. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91

L. Ed. 2d 265 (1986). If Neff successfully negates an essential element of Estes's case, the burden shifts to Estes to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* Estes must show more than the existence of a "metaphysical doubt" regarding the material facts. *See* Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324. Estes must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See* Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by Estes in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him. *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). Nonetheless, Estes still bears the burden of coming forward with sufficient evidence of every element that he must prove. *See* Celotex Corp., 477 U.S. at 317. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

B.    Excessive Force

A claim that an officer used excessive force during the course of an arrest is analyzed under the Fourth Amendment's "reasonableness" standard. *See* Brosseau v. Haugen, 543 U.S. 194, 197, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004); Graham v. Connor, 490 U.S. 386, 394–95, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The analysis is objective, and the question that must be answered "is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." 490 U.S. at 397; *see also* Crenshaw v. Lister, 556 F.3d 1283, 1290 (11th Cir. 2009). Under this framework, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396; *see also* Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009).

As a result, "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." Bell v. Wolfish, 441 U.S. 520, 559, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). Instead, "its proper application requires careful attention to the facts and circumstances of each particular case," which the court achieves by considering such things as "the severity of the crime," whether "the suspect poses an immediate threat to the safety of the officers or others," and "whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. Furthermore, other factors may be considered in determining whether an officer's use of force was objectively reasonable, including "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." Crenshaw, 556 F.3d at 1290 (quotation omitted). The Supreme Court has cautioned that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–97.

The Eleventh Circuit has determined, albeit in an unpublished opinion, that striking a suspect in the head with a heavy flashlight constitutes deadly force. Baltimore v. City of Albany, Ga., 183 F. App'x 891, 898 (11th Cir. 2006) (unpublished).

C.    Heck

In <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d (1994), the Supreme Court held:

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 487. The Supreme Court gave the following as an example of a § 1983 suit that would be barred:

> A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest . . . . He then brings a § 1983 action against the arresting officer seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata the § 1983 action will not lie.

*Id.* at 487 n. 6 (citations omitted) (emphasis in original).

IV.    DISCUSSION

Sergeant Neff argues that taking Estes's second version of events as true would necessarily require a finding that he did not batter Neff, and that finding is inconsistent with Estes's convictions for resisting Neff with violence and battery on Neff (doc. 53 at 2; doc. 54 at 8–12). Therefore, he is entitled to summary judgment pursuant to <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) (*id.*).[3] Estes does not dispute that he pleaded no contest to charges of resisting an officer with violence and battery on a law enforcement officer related to his encounter with Neff (Estes Statement fo Facts ¶ 13; Estes Dep. p. 54).

According to Estes, the entirety of his physical encounter with Neff consisted of the following: (1) Estes tripped on the rocks and fell, with his hands and arms outstretched, (2) almost immediately

---

[3] Even if <u>Heck</u>'s bar to suit is an affirmative defense, Sergeant Neff did not waive <u>Heck</u> by not raising it in his answer, because the waiver of defenses based on grounds rooted in considerations of state sovereignty are treated less harshly than other waivers. *See* <u>Granberry v. Greer</u>, 481 U.S. 129, 134, 107 S. Ct. 1671, 95 L. Ed. 2d 119 (1987); <u>Sullivan v. Conway</u>, 157 F. 3d 1092, 1095 (7th Cir. 1998); <u>Graham v. Johnson</u>, 94 F.3d 958, 970 (5th Cir. 1996) (per curiam); <u>Nat'l Ass'n of Soc. Workers v. Harwood</u>, 69 F.3d 622, 628–29 (1st Cir. 1995); <u>Hardiman v. Reynolds</u>, 971 F.2d 500, 503 (10th Cir. 1992); *see also, e.g.,* <u>Watson v. New Orleans City</u>, No. 00-30438, 275 F.3d 46, 2001 WL 1268716, at *3 (5th Cir. 2001) (unpublished) (specifically applying this rule to <u>Heck</u> defense); <u>Carr v. O'Leary</u>, 167 F.3d 1124, 1127 (7th Cir. 1999) (noting that district court could have forgiven the state's waiver of <u>Heck</u> defense).

thereafter, Neff fell on top of him and immediately struck him twice in the head with his flashlight, (3) at the time Neff fell on him, Estes was not attempting to get up and instead attempted to surrender by outstretching his hands and arms, (4) after Neff struck him, Estes rolled or pushed out from under Neff, and (5) this encounter lasted "a couple of seconds."

Under Florida law, to prove the offense of battery upon a law enforcement officer, the State would have been required to prove: (1) Estes intentionally touched or struck Sergeant Neff against his will, or intentionally caused bodily harm to Neff; (2) Sergeant Neff was a law enforcement officer; (3) Estes knew that Sergeant Neff was a law enforcement officer; and (4) Sergeant Neff was engaged in the lawful performance of his duties when the battery was committed. *See* Fla. Stat. §§ 784.03(1)(a), 784.07(2)(b); Fla. Standard Jury Instructions in Criminal Cases, Part Two: Instructions on Crimes, Ch. 8.11 (instruction adopted in 1981 and amended in 1992, 1995, 2007, and 2008); Wheeler v. State, — So. 3d —, 2013 WL 3214434, at *6 (Fla. June 27, 2013) (that an officer was lawfully performing his duty at the time he was battered is a required element of battery on a law enforcement officer); State v. Henriquez, 485 So. 2d 414 (Fla. 1986); Taylor v. State, 740 So. 2d 89, 90 (Fla. 1st DCA 1999).

Estes's deposition testimony is the only evidence in the record of the facts underlying his battery conviction relating to Neff. Estes states in his deposition he pleaded nolo contendere to the battery charge based upon his conduct of rolling or pushing out from under Neff after Neff hit him with the flashlight (Estes Dep. pp. 54–55). Estes admits in his pleadings and summary judgment material, that the lawfulness of Sergeant Neff's striking him with the flashlight had a direct bearing upon his conduct underlying his conviction for battering Neff. Estes states in his Second Amended Complaint:

> Sergeant Neff landed on top of Plaintiff after the Plaintiff had fallen and attempted to surrender by outstretching his hand and arms. Sergeant Neff immediately started hitting Plaintiff in and around the head with his heavy metal flashlight after he had fallen. After the second or third strike, the Plaintiff maneuvered out from under Sergeant Neff and proceeded to jump into the water in an attempt to avoid further beating. Plaintiff was able to avoid any further beating by Sergeant Neff by swimming away.

(doc. 73 at 5). Estes states in his deposition:

> It didn't really seem he was trying to arrest me, . . . he immediately jumped on me and started beating me with his flashlight. He did not grab a hand. He did not

attempt to put a handcuff on me. He did not attempt to, it seemed, take me into custody, it just seemed like this guy was assaulting me.

. . . .

[Neff] didn't use any sort of . . . continuum of force, he didn't use pepper spray or tasers or . . . his ASP . . . . Just came immediately, went right to a weapon of deadly force when I had, I had resisted arrest, I had resisted arrest without violence, and he immediately used excessive force against me by . . . trying to detain me, but I took it as just an assault of me with his flashlight.

(Estes Dep. pp. 58–59). Estes additionally states once he felt the contact of the flashlight, he was "in fear for [his] life" and "decided it was time to flee for my life" (Estes Dep. pp. 56–57). He states he then rolled out from under Neff, and in doing so, intentionally touched Neff against his will (Estes Dep. p. 57).

Because the State was required to prove as an element of the crime that Sergeant Neff was acting lawfully at the time Estes battered him, and Estes argues here that Neff was using unlawful excessive force at the time he battered Neff, a successful § 1983 claim against Neff would necessarily imply the invalidity of Estes's conviction for battery on Neff. Estes has not shown that the battery conviction has been invalidated; therefore, his claim is barred by Heck unless and until his conviction for battery upon Neff is overturned or otherwise invalidated. *See, e.g.*, Anderson v. Tyus, No. 4:06cv4/SPM/WCS, 2007 WL 2884367, at *6 (N.D. Fla. Sept. 27, 2007) (unpublished) (prisoner plaintiff's excessive force claim against one defendant officer (Childs) was Heck-barred, where plaintiff pleaded guilty to battery on Childs and was found guilty in a prison disciplinary proceeding of assaulting Childs; whatever the truth of the way in which plaintiff, Childs, and other defendant officer initially interacted, plaintiff struck Childs without justification, and he could not attempt to prove otherwise in the § 1983 action; to allow plaintiff to prove his version of events—that he was restrained by the other defendant officer in a choke hold and beaten by Childs and the other officer, and that he did not strike Childs without justification—would necessarily imply the invalidity of the disciplinary action taken against him and his criminal conviction).

V.    CONCLUSION

Viewing the evidence in the light most favorable to Plaintiff, the non-movant, the court concludes that success on Estes's excessive force claim against Sergeant Neff would imply the

invalidity of his conviction for battery upon Neff. Therefore, Estes's Fourth Amendment claim against Sergeant Neff should be dismissed without prejudice.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the motion for summary judgment filed by Defendant Neff (doc. 53) be **GRANTED**.

2.      That Plaintiff's claim against Defendant Neff be **DISMISSED without prejudice** pursuant to Heck v. Humphrey, 512 U.S. 477 (1994).

At Pensacola, Florida, this 11th day of December 2013.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**